UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

          Plaintiff,

   v.

JOHNSON IVANCEVICH, LLP, LAW OFFICES OF STEVEN A. JOHNSON AND GEORGE S. IVANCEVICH, LLC, ARTHUR C. JOHNSON, STEVEN A. JOHNSON, GEORGE S. IVANCEVICH, COMMERCIAL COOLING AND HEATING, INC., JEANNIE ANDERSON, and KEITH ANDERSON,

          Defendants.

Case No. _____

## COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT

Minnesota Lawyers Mutual Insurance Company ("MLM"), for its Complaint for Rescission and Declaratory Judgment against defendants Johnson Ivancevich, LLP ("JILLP"), Law Offices of Steven A. Johnson and George S. Ivancevich LLC ("JILLC"), Arthur C. Johnson ("A. Johnson"), Steven A. Johnson ("S. Johnson"), George S. Ivancevich ("Ivancevich")[1], Commercial Cooling and Heating, Inc. ("CCH"), Jeannie Anderson ("J. Anderson"), and Keith Anderson ("K. Anderson")[2], alleges as follows:

## NATURE OF THIS ACTION

1. This is an action for (1) rescission of a 2019-2020 professional liability insurance policy number 1-MLM-29197-12 (the "Policy") MLM originally issued to JILLP and (2)

---

[1] A. Johnson, S. Johnson and Ivancevich are collectively referred to as the "Johnson Attorneys". JILLC, JILLP and the Johnson Attorneys are collectively referred to as the "Johnson Parties."

[2] CCH , J. Anderson, K. Anderson and are collectively referred to as the "CCH Parties".

declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202. Specifically, MLM seeks to rescind the Policy - due to material misrepresentations, omissions, concealment of facts, and incorrect statements in JILLP's written application for the Policy - and a resulting declaration that MLM has no obligation to defend or indemnify for any claims made under the Policy.

## PARTIES

2. MLM is an insurance company incorporated under the laws of the State of Minnesota and has its principal place of business in Minneapolis, Minnesota. MLM, therefore, is a citizen of Minnesota.

3. JILLP is a limited liability partnership organized under the laws of Indiana and maintains a principal place of business in Merrillville, Indiana. JILLP's partners are citizens of Indiana. JILLP is, therefore, a citizen of Indiana.

4. JILLC is a limited liability company organized under the laws of Indiana and maintains a principal place of business in Merrillville, Indiana. JILLC's members are citizens of Indiana. JILLC is, therefore, a citizen of Indiana.

5. A. Johnson is an individual who, upon information and belief, is domiciled in Indiana. A. Johnson is, therefore, a citizen of Indiana. At all times relevant to this action, A. Johnson was an attorney, admitted to practice law in Indiana and was a partner of JILLP.

6. S. Johnson is an individual who, upon information and belief, is domiciled in Indiana. S. Johnson is, therefore, a citizen of Indiana. At all times relevant to this action, S. Johnson was an attorney, admitted to practice law in Indiana, a member of JILLC, and a partner of JILLP.

7. Ivancevich is an individual who, upon information and belief, is domiciled in Indiana. Ivancevich is, therefore, a citizen of Indiana. At all times relevant to this action,

Ivancevich was an attorney, admitted to practice law in Indiana, a member of JILLC, and a partner of JILLP.

8. CCH is an Indiana corporation with its principal place of business in Indiana, and is therefore a citizen of Indiana. CCH is named as a defendant in this action because it has asserted legal malpractice claims against some of the Johnson Parties and any rights it may have with respect to insurance coverage for one of those claims may be affected by the outcome of this action.

9. J. Anderson is an individual who is domiciled in Indiana. J. Anderson is, therefore, a citizen of Indiana. J. Anderson is named as a defendant in this action because she has asserted legal malpractice claims against some of the Johnson Parties and any rights she may have with respect to insurance coverage for one of those claims may be affected by the outcome of this action.

10. K. Anderson is an individual who is domiciled in Indiana. K. Anderson is, therefore, a citizen of Indiana. K. Anderson is named as a defendant in this action because he has asserted legal malpractice claims against some of the Johnson Parties and any rights he may have with respect to insurance coverage for one of those claims may be affected by the outcome of this action

## JURISDICTION AND VENUE

11. Federal subject matter jurisdiction exists in this action, pursuant to 28 U.S.C. § 1332, because it is an action between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Northern District of Indiana because a substantial part of the events giving rise to MLM's claim for rescission occurred in this district.

## THE APPLICATION FOR PROFESSIONAL LIABILITY INSURANCE

13. JILLP submitted to MLM a Renewal Application for Lawyers Professional Liability Insurance – Claims Made Form (the "Application"), which was dated June 20, 2019 and signed by S. Johnson. A copy of the Application is attached and incorporated in this Complaint as **Exhibit A**.

14. In the Application, JILLP answered "No" in response to Question 25(a) and "Yes" in response to Question 25(b), as follows:

> **CLAIMS, POTENTIAL CLAIMS AND DISCIPLINE**
>
> All known claims, lawsuits or incidents, and any acts, errors, omissions, situations, transactions or events that could reasonably support or lead to a claim or lawsuit in the future should be reported to your current professional liability insurer before the claims reporting period under the policy expires. Any claim or lawsuit arising from such known claim, lawsuit, incident, act, error, omission, situation, transaction or event would not be covered under the proposed Minnesota Lawyers Mutual Professional Liability Insurance Policy.
>
> 25. In the **last 12 months:**
>
>    a. have any Claims been made against any member of the firm?
>
>    b. has any firm member become aware of any INCIDENT which could reasonably result in a claim being made against the firm or a member of the firm? Include problematic situations, even if the client hasn't yet complained.
>
> **\* If yes to a. or b., give full details on the attached Supplemental Claim Application and provide copies of all relevant documents.**
>
> \*\*\*

15. Immediately above S. Johnson's signature, the Application provides, in relevant part, as follows:

> The undersigned authorized representative of the firm agree to all of the following:
>
> - Declares after diligent inquiry the above statements and particulars are true and no material facts have been suppressed or misstated.
> - Acknowledges it is understood and agreed the completion of this application does not bind Minnesota Lawyers Mutual Insurance Company to issue the insurance.
> - If The Company accepts this application by issuing a policy, this application shall be the basis of the policy of insurance and incorporated herein. The policy will be issued in reliance on the information contained in the application and all such information is deemed to be "material."
> - The applicant hereby certifies all known claims, lawsuits, incidents, and disciplinary investigations have been reported to the present and previous insurance carriers and the applicant has no knowledge of any threatened litigation or existing fact or situation which could result in a claim being filed against the applicant.
> - Failure by the applicants to report any known claim, lawsuits, incident, or disciplinary investigation or any known facts which may result in a claim, to current or previous insurers may result in the declination of coverage for these matters by current or previous insurers.
> - By signing this application you agree that we may contact you.

16. In light of JILLP's response to Application Question 25(b), JILLP submitted, as part of the Application, a Supplemental Claim Application dated June 20, 2019 and signed by S. Johnson.

17. On the Supplemental Claim Application, JILLP identified CCH as a potential claimant and advised MLM as follows:

> This is a potential claim: A secretary advised that she filed an Answer in a claim for unpaid fringe benefit contributions. When the Answer did not appear in the record, the court conducted an inquiry, including taking the testimony of the secretary. Ultimately, the Court determined that the secretary was lying, and defaulted the client.

18. In the Supplemental Claim Application, JILLP also advised that it terminated the secretary and provided the following information regarding damages:

5

> There are no damages that flow from this event. The measure of damages is the amount of unpaid contributions plus contractual penalties for nonpayment. The default changes nothing, as the plaintiff's proof is the same whether the case is tried on liability or both liability and damages.

19. JILLP did not identify any other claims or potential claims (i.e. incidents which could reasonably result in a claim being made against JILLP or a member of JILLP) on the Supplemental Claim Application.

20. In connection with its Application, JILLP also provided to MLM a Warranty Statement, signed by S. Johnson and dated June 26, 2019, in which S. Johnson stated as follows:

> The undersigned authorized representative of the firm certifies that:
>
> - There have been no significant changes in the firm's practice or any information contained in the previously submitted application.
>
> - After having made inquiry of all firm attorneys, is not aware of any claims or circumstances that could result in claims or disciplinary proceedings that have not been reported to Minnesota Lawyers Mutual.
>
> - All known claims, lawsuits, incidents, and/or disciplinary proceedings have been reported to the present or previous insurance carriers, and the undersigned, after having made inquiry of all firm attorneys, has no knowledge of any threatened litigation or existing facts or situation which could result in a claim or disciplinary action being filed against the firm.
>
> If the undersigned learns of any facts inconsistent with these certifications before coverage is issued, the undersigned will provide immediate written notification to Minnesota Lawyers Mutual.
>
> * * *

A true and correct copy of the Warranty Statement is attached as **Exhibit B** and incorporated in this Complaint.

## THE MLM INSURANCE POLICY

21. In reliance on the Application, MLM issued the Policy, which is a Lawyers Professional Liability Insurance Claims-Made and Reported Policy, for the policy period of June 21, 2019 to June 21, 2020. A true and correct copy of the Policy is attached as **Exhibit C** and incorporated into this Complaint.

22. The Declarations included in the Policy originally listed the NAMED INSURED[3] as Johnson Ivancevich, LLP.

23. Effective December 23, 2019, at JILLC's request, the Policy was endorsed to reflect The Law Offices of Steven A. Johnson and George S. Ivancevich, LLC as the NAMED INSURED.

24. The Policy's limits of liability are $5,000,000 per CLAIM, and $5,000,000 in the aggregate, subject to an each CLAIM deductible of $5,000.

25. The Policy contains the following condition:

*REPRESENTATION IN APPLICATION*

The APPLICATION is a part of this policy.

By acceptance of this policy the INSURED agrees:

(1) the statements in the APPLICATION are the representations of all INSUREDS;
(2) such representations are material as this policy is issued in reliance upon the truth of such representations; and
(3) this policy embodies all agreements between the INSURED, US and/or OUR agent.

\*\*\*

---

[3] Terms appearing in ALLCAPS, and not defined in this Complaint, are defined in the Policy.

## THE UNDERLYING CLAIMS

### *The Pipefitters Action*

26.   The CCH Parties have asserted a legal malpractice claim against the Johnson Parties in connection with their representation of CCH and J. Anderson in *Board of Trustees of the Pipe Fitters Retirement Fund, Local 597, et al. v. Commercial Cooling and Heating, Inc.*, No. 1:13cv-07731, in the United States District Court for the Northern District of Illinois (the "Pipefitters Action"), which resulted in a default judgment in excess of $2.5 million entered against CCH and J. Anderson.

27.   The Pipefitters Union (the "Union") filed the Pipefitters Action on October 29, 2013 as an ERISA action against CCH and J. Anderson, arising out CCH's alleged breach of a collective bargaining agreement with the Union.

28.   CCH and J. Anderson retained JILLP to represent them in connection with the Pipefitters Action.

29.   On December 2, 2013, the Johnson Attorneys filed appearances and an answer on behalf of CCH and J. Anderson in the Pipefitters Action.

30.   Upon information and belief, the parties to the Pipefitters Action settled the dispute and, on February 22, 2016, entered a stipulated order of dismissal with the Court, whereby the Court retained jurisdiction of the matter to enforce the terms of the settlement agreement.

31.   On January 31, 2018, the Union filed a motion to reinstate the lawsuit and for leave to file its Amended Complaint, based on CCH's alleged failure to comply with certain provisions of the settlement agreement.

32.   On July 23, 2018, the Court in the Pipefitters Action held a status conference, which the Johnson Attorneys did not attend. At the status conference, the Union's counsel reported to the Court that CCH had not submitted additional documents as requested at a

May 15, 2018 status conference.  The Court granted the Union's motion to reinstate the action and file its First Amended Complaint, which the Union filed on July 23, 2018.

33. On August 24, 2018 - after CCH and J. Anderson did not respond to the Amended Complaint - the Union filed a Motion for Default Judgment against CCH and J. Anderson.

34. On August 27, 2018, JILLP, through A. Johnson, filed an Answer on behalf of CCH and J. Anderson, and a Response to the Union's Motion for Default Judgment.  In its Response to the Motion for Default Judgment, JILLP asserted that a paralegal employed by JILLP attempted to timely file the responsive pleading on August 15, 2018, but received an error notice that the files could not be loaded to the Court's docket.  JILLP further asserted that the paralegal emailed the Court the ECF confirmation of filing.

35. The Court subsequently requested that JILLP submit a screenshot of the "error message" it received when JILLP purportedly attempted to file the Answer on August 15, 2018.

36. On September 26, 2018, the Union filed a Motion for Sanctions against JILLP and CCH.  In its motion, the Union asserted that the email JILLP forwarded to the Court, purportedly demonstrating that it had attempted to timely file an Answer to the Amended Complaint, was "doctored".  The Union further asserted that JILLP made a false representation to the Court that the files were not properly uploaded.

37. On October 4, 2018, the Court held a hearing on the Motion for Sanctions, but no attorney from JILLP appeared.  The Court then ordered that the president of CCH personally appear at a court hearing on October 9, 2018.  The Court also ordered CCH and JILLP to pay the Union's counsel's fees in the amount of $500.00.

38. A. Johnson appeared at the subsequent court hearing on October 9, 2018, but the president of CCH did not attend.  A. Johnson advised the Court at that time that he did not read

the part of the Court's order requiring that the president appear at the hearing, and he therefore did not advise her to do so. In a subsequent Memorandum and Order, the Court described that statement to the Court as "a contrived and disingenuous excuse." The Court scheduled another hearing for October 25, 2018, and ordered CCH's president and JILLP's paralegal to appear then. The Court also stated in its October 9, 2018 Order that information provided to the Court called into substantial question (1) A. Johnson's representation that there had been an unsuccessful attempt to file the Answer on August 15, and (2) the very existence of the claimed error message on which A. Johnson was relying.

39. At the October 25, 2018 hearing, JILLP's paralegal was questioned about the "error message" she allegedly received on August 15, 2018, when she claimed to have attempted to file CCH's Answer originally. Based on testimony presented, the Court noted that there were significant discrepancies in the messages purportedly received by JILLP and that were presented to the Court, which raised the question of whether JILLP had made a "significant misrepresentation to the Court."

40. On May 28, 2019, the Court entered a lengthy and detailed Memorandum and Order finding an attempt was made to perpetrate a fraud on the Court by misrepresenting the date of the attempted filing of the Answer in August 2018. Specifically, the Court found that testimony at the October 25, 2018 hearing overwhelmingly demonstrated that (1) A. Johnson and JILLP's paralegal did not file or attempt to file the Answer on August 15, 2018; (2) A. Johnson and JILLP's paralegal lied in a communication with the Court and in JILLP's Response to the Plaintiff's Motion of Default Judgment; and (3) an email to the Court was fraudulently manipulated. The Court determined that JILLP's paralegal's fraudulent acts were imputed to A. Johnson and JILLP, and that A. Johnson's conduct in connection with the matter constituted

bad faith.  The Court further found that JILLP's fraudulent and "bad faith" conduct were imputed to CCH and J. Anderson.  The Court therefore imposed monetary sanctions against A. Johnson and JILLP in excess of $31,000.00, entered a default against CCH and J. Anderson, and set the matter for hearing on damages.

41. On June 4, 2019, the Union filed and served on A. Johnson a motion for final judgment, pursuant to which the Union sought judgment against CCH in excess of $2.5 million.

42. On July 1, 2019, the Court entered a default judgment against CCH in the amount of $2,547,720.44, with post-judgment interest.

43. Upon information and belief, the Pipefitters Action was the potential claim identified on the Supplemental Claim Application and described in paragraphs 17 and 18 of this Complaint, and the paralegal the Court found to have lied to the Court is the "secretary" described in the Supplemental Claim Application.

44. A. Johnson's conduct in connection with the Pipefitters Action was also the subject of a complaint to, and investigation by, the Attorney Registration and Disciplinary Commission for the Supreme Court of Illinois ("ARDC").  Upon information and belief, the ARDC notified A. Johnson of the ARDC complaint and investigation in September, October and December 2018.  A. Johnson initially retained counsel to defend him against the disciplinary matter prior to June 20, 2019.

45. The CCH Parties have asserted, against some of the Johnson Parties, a legal malpractice claim arising out of the Pipefitter's Action (the "Pipefitters Claim"), which claim is included within a suit J. Anderson and K. Anderson filed on March 3, 2020, styled *Jeannie Anderson, et al. v. Johnson Ivancevich, LLP, et al.* cause number 45C01-2003-CT-000248 in the Lake County, Indiana Circuit Court (the "Malpractice Action").

46. MLM is providing a defense for the Johnson Parties against the Pipefitters Claim, pursuant to the terms of a prior MLM lawyers professional liability insurance policy issued to JILLP (effective June 21, 2018 to June 21, 2019), subject to a reservation of rights to disclaim coverage, and has appointed defense counsel to handle the matter.

47. By June 20, 2019, when JILLP completed and submitted the Application, JILLP and its members were aware that, on May 28, 2019, less than 30 days prior, the Court in the Pipefitters Action entered a Memorandum and Order finding that an attempt was made by JILLP to perpetrate a fraud on the Court in connection with JILLP's filing of an Answer in August 2018. As of that date, JILLP was also aware that the Court found that JILLP's misrepresentations to the Court and A. Johnson's "bad faith" litigation conduct were imputed to JILLP's clients and the Court accordingly imposed substantial monetary sanctions against A. Johnson and JILLP and entered a default against CCH and J. Anderson. Although a final default judgment amount was not awarded until July 1, 2019, JILLP was aware by June 20, 2019 that CCH sought judgment in excess of $2.5 million. JILLP was, therefore, aware, at the time of the Application, of an incident which could reasonably result in a claim being made against JILLP or a member of JILLP, and that such claim would be for significant damages. While JILLP disclosed on the Supplemental Claim Application limited information relating to the Pipefitters Action, it misrepresented, omitted, concealed, and/or provided incorrect statements regarding the factual background, scope and severity of this matter.

### *The Jack Gray Matters*

48. Jack Gray Transport Inc. ("Jack Gray") has also asserted legal malpractice claims against JILLP in connection with JILLP's representation of Jack Gray in (1) *Ports of Indiana v. Jack Gray Transport, Inc.,* No. 64D01-1711-PL-011167, in the Porter County Superior Court, Indiana (the "Ports Action"); and (2) *International Longshoremen's Association, Local 1969 v.*

*Jack Gray Transport, Inc., d/b/a Lakes and Rivers Transfer and Lakes and Rivers Logistics, Inc.,* No. 2:18-cv-276-JVB-JEM, in the United States District Court for the Northern District of Indiana (the "Local 1969 Action"). In the June 2019 Application, JILLP failed to disclose the circumstances involved in these actions as incidents which could reasonably result in a claim being made against JILLP or a member of JILLP.

### *The Ports Action*

49. Jack Gray retained JILLP to represent it in connection with the Ports Action, which was filed on November 29, 2017 and arose out of a dispute between the Ports of Indiana ("Ports") and Jack Gray regarding a Lease Agreement, whereby Jack Gray leased certain real estate and a bulk storage warehouse for Jack Gray's storage and distribution operations.

50. On January 23, 2018, JILLP filed an Answer and Counterclaim in the Ports Action, alleging that Jack Gray made certain improvements to the leased property of which it is the legal owner, and that Ports unlawfully seized these improvements in violation of the lease and Indiana law. Jack Gray asserted counterclaims for violation of the Indiana Constitution, breach of contract, and unjust enrichment, and sought compensatory damages accordingly.

51. On April 13, 2018, Ports filed a Motion for Judgment on the Pleadings, seeking dismissal of Jack Gray's Counterclaim. JILLP did not file a written response to the Motion for Judgment on the Pleadings and, on August 6, 2018, the Court dismissed, with prejudice, Jack Gray's Counterclaim, which had been previously valued by Jack Gray at over $2 million.

52. On December 11, 2018, Ports filed a Motion to Compel Discovery, which the Court granted on December 12, 2018, ordering that Jack Gray respond to outstanding discovery within 30 days of that order.

53. On January 23, 2019, Ports filed a Motion for Sanctions against Jack Gray, stating that Jack Gray's counsel (*i.e.*, JILLP) had failed to comply with discovery requests, failed to

respond to communications regarding discovery, and failed to produce a witness for a deposition, without excuse. Ports asked the Court for sanctions and entry of default judgment, which was allegedly worth in excess of $1 million. No response to the motion was filed on behalf of Jack Gray.

54. On April 16, 2019, the Court granted the Motion for Sanctions, ordering payment of $17,961.12 for fees and costs incurred by Ports in pursuing discovery against Jack Gray.

55. On April 19, 2019, Ports filed an Emergency Renewed Motion for Sanctions, seeking entry of default judgment against Jack Gray. On April 22, 2019, the Court granted this motion and entered a default judgment against Jack Gray on all of Ports' claims, and ordered that Jack Gray and/or its counsel pay Ports' attorney's fees and costs incurred in connection with the Emergency Motion. The Court set a damages hearing for June 19, 2019, at which no JILLP attorney appeared to oppose Ports' damages claim.

56. On July 10, 2019, the Court entered a judgment against Jack Gray in the amount of $1,806,047.00, plus costs and post-judgment interest. On that date the Court further found Jack Gray in contempt for failing to comply with prior orders and fined Jack Gray $10,000.00.

57. In July 2019, Jack Gray asserted a legal malpractice claim against JILLP arising out of the default judgment entered against Jack Gray in the Ports Action, as well as for its lost counterclaims and potential loss of grants. Although JILLP did not report this claim to MLM, Jack Gray's counsel did so on August 1, 2019.

58. By June 20, 2019, when JILLP completed the Application, a member of JILLP had knowledge and was aware, among other things, that the Court had entered a default against Jack Gray as a sanction due to JILLP's discovery non-compliance, had entered monetary sanctions against Jack Gray for failure to comply with discovery requests, and had dismissed Jack Gray's

valuable counterclaims with prejudice. JILLP was, therefore, well aware, at the time the Application was submitted, of incidents in connection with the Ports Action which could reasonably result in a significant claim being made against JILLP or a member of JILLP, and failed to disclose them.

### *The Local 1969 Action*

59. In the Local 1969 Action, International Longshoremen's Association, Local 1969 ("Local 1969") filed a Complaint against Jack Gray and Lakes and Rivers Logistics, Inc. ("Logistics")[4], pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (a), seeking an order compelling defendants to arbitrate grievances in accordance with the parties' collective-bargaining agreement.

60. JILLP represented the Jack Gray Parties in the Local 1969 Action.

61. In connection with JILLP's representation of Jack Gray in the Local 1969 Action, the following, among other things, occurred:

- JILLP did not file an Answer on behalf of the Jack Gray Defendants, by the initial August 22, 2018 deadline, prompting Local 1969 to file a motion for entry of default judgment, which motion was later withdrawn.

- On November 2, 2018, JILLP opposed the motion for default judgment and stated that it failed to answer the complaint timely because "[t]he deadline with which to file its responsive pleading was not calendared and thereafter, intra-office issues arose with one or more of the support staff (including but not limited to the failure to calendar other hearings, dates, and deadlines leading to conflicts and delays), which caused this matter to be overlooked."

- On March 14, 2019, the Court granted Local 1969's Motion to Compel Production of Documents and Extend Close of Discovery for failure to timely respond to discovery or provide Rule 26(a)(1) disclosures.

- On April 8, 2019, Local 1969 filed a Motion for Rule to Show Cause and the Jack Gray Parties were then ordered to appear before the Court to show cause

---

[4] For purposes of this Complaint and MLM's discussion of the Local 1969 Action, Jack Gray and Logistics are collectively referred to as the "Jack Gray Parties."

as to why they should not be held in contempt for failure to comply with the Court's order to produce records. The Court further advised that failure to appear as required or other disobedience may warrant sanctions by the Court.

- On April 16, 2019, the Court ordered Jack Gray to reimburse Local 1969's attorney fees, in the amount of $2,375.00, in connection with the Motion to Compel.

- On May 13, 2019, at the hearing on the Motion to Show Cause, A. Johnson appeared and stated reasons for failure to provide discovery responses. He also asserted that he paid to opposing counsel attorney's fees associated with the motion to compel.

62. On August 21, 2019, MLM received notice from Jack Gray that it was asserting a second legal malpractice claim (in addition to the Ports matter) against JILLP and the Johnson Attorneys related to their handling of the Local 1969 Action, asserting that their discovery noncompliance lead to the entry of sanctions, and that despite the Court's order that Jack Gray "or their attorney" pay $2,375 to opposing counsel, A. Johnson and JILLP had not paid the sanction.

63. Upon information and belief, by June 20, 2019, when JILLP completed the Application, a member of JILLP was aware of the circumstances described in paragraphs 59 through 61 of this Complaint. JILLP was, therefore, aware, at the time the Application was submitted, of incidents in connection with the Local 1969 Action which could reasonably result in a claim being made against JILLP or a member of JILLP, and failed to disclose them.

### *The EDCO Claim*

64. In the Malpractice Action, J. Anderson and K. Anderson have asserted a second legal malpractice claim (the "EDCO Claim") against some of the Johnson Parties arising out of the Johnson Parties' representation of the CCH Parties in an action styled *EDCO Environmental Services, Inc. v. City of Crown Point, Indiana, et al.*, No. 45D09-1307-PL-00085, pending in the Lake County, Indiana Circuit Court.

65. MLM is providing a defense for the EDCO Claim, pursuant to the terms of the Policy and subject to a complete reservation of MLM's rights to disclaim coverage and seek the Policy's rescission, and has appointed defense counsel to handle the matter.

## COUNT I
### (Rescission of the 2019-2020 Policy)

66. MLM realleges paragraphs 1-65 above as if set forth fully as this paragraph 66.

67. The Application contained misrepresentations, omissions, concealment of facts, or incorrect statements in connection with JILLP's response to Question 25(b) regarding whether any firm member has become aware of any incident which could reasonably result in a claim being made against JILLP or a member of JILLP.

68. At the time JILLP submitted the Application and, specifically, the Supplemental Claim Application, JILLP had knowledge that, on May 28, 2019, the Court in the Pipefitters Action had entered an Order finding that JILLP attempted to perpetrate a fraud on the Court by, among other things, misrepresenting the filing date for an Answer.  JILLP was also aware, at that time, that the Court found A. Johnson engaged in "bad faith" litigation conduct.  JILLP was also aware that the Court found that such misrepresentations and "bad faith" conduct were imputed to CCH and J. Anderson, that the Court consequently entered a default against CCH and J. Anderson, and that the Court entered significant monetary sanctions against JILLP.  JILLP also knew that the damages the Union sought were in excess of $2.5 million.  Accordingly, JILLP misrepresented, omitted, concealed, and/or provided incorrect statements regarding the full facts, scope and severity of the Pipefitters Action.

69. At the time JILLP submitted the Application, JILLP also was aware of conduct in connection with the Ports Action, including (1) JILLP's failure to oppose dismissal of its client's counterclaims, and (2) discovery violations resulting in significant monetary sanctions and a

default judgment entered against JILLP's client.  In failing to disclose such incidents on the Application, or otherwise disclose them during the renewal process, JILLP misrepresented, omitted, concealed, and/or provided incorrect statements in the Application.

70. At the time JILLP submitted the Application, JILLP was also aware of its conduct in connection with the Local 1969 Action, including (1) missed deadlines for answering the complaint, and (2) discovery violations resulting in monetary sanctions against JLLP's client.  In failing to disclose such incidents on the Application, or otherwise disclose them during the renewal process, JILLP misrepresented, omitted, concealed, and/or provided incorrect statements in the Application.

71. MLM did not know of the above-described misrepresentations, omissions, concealments of facts and/or incorrect statements, and thus relied on the statements made in the Application when making the decisions with respect to the renewal of the Policy.

72. The true facts referenced in paragraphs 26 through 61 of this Complaint, if stated and fully disclosed in the Application, would have influenced MLM in deciding whether to reject or accept the risk or charge a higher premium for the Policy.

73. As a result of the material misrepresentations, omissions, concealment of facts, or incorrect statements in connection with the Application, upon which MLM relied in renewing the Policy, the Court should rescind the Policy and declare that there is no coverage for any claim made against JILLP, JILLC or any other insured under the Policy, including, without limitation, the EDCO Claim.

74. MLM has tendered to the Johnson Parties all amounts paid as premium for the Policy.

WHEREFORE, MLM respectfully requests that the Court enter a judgment:

a. Rescinding the Policy;

b. Declaring the Policy void as of its inception;

c. Declaring that MLM has no duty to defend or indemnify the Johnson Parties or any other insured against any claim under the Policy, including, without limitation, the EDCO Claim; and

d. Granting such other relief as the Court may deem just and proper.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY,

By: /s/ Christopher J. Bannon

Christopher J. Bannon
cbannon@agdglaw.com
Amber O. LaFevers
alafevers@agdglaw.com
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Avenue, Suite 1700
Chicago, IL 60611
(ph.) (312) 755-3175
(fax) (312) 222-6375

*Attorneys for Plaintiff Minnesota Lawyers Mutual Insurance Company*

4825-8307-2693, v. 3